***********
Having reviewed the competent evidence of record, and having the benefit of the positions of the parties, the Full Commission reverses the Opinion and Award of the deputy commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and following in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1 as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 29 June 1995, an employment relationship existed between the plaintiff-employee and defendant-employer.
3. On 29 June 1995, Liberty Mutual Insurance Company was the carrier at risk.
4. The plaintiff's average weekly wage on 29 June 1995 was $498.00, yielding a compensation rate of $332.00 per week.
5. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #2.
6. The following Industrial Commission Forms are admitted into evidence as Stipulated Exhibit #3: Forms 18, 61, 33 and 33R.
7. Plaintiff's 5 September 1997 Recorded Interview is admitted into evidence as Stipulated Exhibit #4.
8. The issues to be determined by the Commission is whether the plaintiff sustained a compensable injury arising out of and in the course of his employment with defendant-employer on 29 June 1995; and, if so, what, if any, benefits is he entitled.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Bradford Faulkenberry and Dr. Malcolm Shupeck are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On June 29, 1995 plaintiff was a thirty-nine year old male employed by defendant-employer as a press operator. This position included duties of changing machine parts, running a press, changing dyes and loading machinery. Plaintiff worked second shift. Plaintiff began this position around May 1994 as a temporary employee and then became permanent in July or July 1994.
2. On June 29, 1995, plaintiff was performing his duties on second shift and helped Ralph Graham, a materials handler, pick up a top cord. A top cord (or pearlies) weighs approximately one hundred pounds and is approximately fifty-two feet long. Plaintiff and Mr. Graham were stacking these cords so another co-worker could lift them with a crane. Plaintiff and Mr. Graham were at separate ends of the top cord and the plaintiff had to lift his end over his head because the top cord sags in the middle. Plaintiff testified that, when he lifted the top cord overhead, he felt a pop and sharp pain in his back and fell down to one knee. Plaintiff also testified that he thought he had just pulled a muscle and that he informed Mr. Graham he could not help him anymore. In contrast to this testimony, Mr. Graham testified that he did not believe that plaintiff went down on a knee, told him that he was injured, or failed to complete the job, but that, if plaintiff's testimony were true, then Mr. Graham simply did not remember such an incident. Mr. Graham did not recall any incident or injury to plaintiff. Mr. Graham's recollection may have been affected by the time period from the alleged date of injury until the injury was reported to the defendant.
3. Plaintiff did not report his alleged work-related injury on June 29, 1995. Plaintiff returned to work the next day. Plaintiff testified that, after working four hours, he informed Mr. Duncan Stewart, a supervisor, he had hurt his back and had to go home. Mr. Stewart does not recall this conversation. Like Mr. Graham, Mr. Stewart's recollection may have been affected by the time period from the alleged date of injury until plaintiff filed a workers' compensation claim.
4. Plaintiff was out on his scheduled vacation the next week.
5. When plaintiff returned to work on July 10, 1995, Dana Wilson, the plant manager, asked plaintiff about his odd gait. Plaintiff informed Mr. Wilson that he hurt his back when he got up from a chair. Plaintiff testified that he did not inform Mr. Wilson that the injury occurred at work because the company was eligible for a corporate safety flag for "no time loss" injuries and plaintiff did not want to be the one who prevented the company from receiving this honor.
6. On July 11, 1995, plaintiff sought treatment from his regular family physician, Dr. Bradford Faulkenberry. Plaintiff reported a three-day history of severe low back pain with some radiation into his posterior thighs. Plaintiff did not indicate he injured his back at work but instead told Dr. Faulkenberry he felt a severe pain in his lower back when he bent over while cooking out. The three-day history of pain would be consistent with an injury on July 8, 1995, while plaintiff was on vacation.
7. On July 11, 1995, Plaintiff did not exhibit any kind of nerve impingement and Dr. Faulkenberry diagnosed him with acute lumbar strain with radiation of pain. Dr. Faulkenberry prescribed pain medication, muscle relaxants and stretching exercises.
8. On July 14, 1995, plaintiff received physical therapy at Scotland Memorial Hospital and indicated he had low back pain for five days. Plaintiff told them he had pain when he got out of a chair on July 8, 1995, which is, again, consistent with an injury occurring while plaintiff was on vacation.
9. Plaintiff returned for treatment to Dr. Faulkenberry on July 18, 1995 and July 26, 1995. At the latter visit, plaintiff's examination revealed possible herniated disc and nerve impingement. Dr. Faulkenberry ordered a MRI. This MRI revealed plaintiff had a disc fragment posterior to the first lumbar vertebra that appeared to be compressing the cord and had impingement of the left first lumbar nerve root as well as a central disc herniation of the L4-L5 with no impingement, and also a small disc at L5-S1 with just slight posterior displacement of the S1 nerve root. Plaintiff was referred to Dr. Shupeck for surgical consultation.
10. Plaintiff saw Dr. Shupeck for the first time on August 7, 1995. Plaintiff reported low back pain, hip pain and right leg numbness, and that the pain began when plaintiff got out of a chair. Dr. Shupeck excused plaintiff from working.
11. On September 6, 1995, Dr. Shupeck performed surgery on plaintiff consisting of a partial hemilaminectomy and diskectomy on the right. Following surgery, plaintiff did not appreciably improve. Plaintiff had worsening symptoms including bilateral leg pain, right greater than left and right leg numbness.
12. A repeat MRI on April 19, 1996, revealed a disc bulge at L4-5 lateralizing to the right which was not a significant change from the August 1995 MRI, and a broad-based central disc bulge at L5-S1. The myelogram performed the same day showed encroachment on the existing right L5 lumbar nerve root.
13. On May 8, 1996 plaintiff underwent a lumbar re-exploration, L4-5 right diskectomy. Dr. Shupeck also removed a large amount of scar tissue.
14. Following the surgery, plaintiff still experienced a great deal of lower back and leg pain. A July 2, 1996 MRI showed post-operative scarring on the right side at the L4-5 level surrounding the right L5 nerve root, as well as a stable left-sided herniated disk at the L1-2 level.
15. When plaintiff's pain did not improve, Dr. Shupeck referred him to Dr. Lee at the Physical Medicine and Rehabilitation Clinic at UNC Hospital. The plaintiff saw Dr. Lee on October 24, 1996. Plaintiff reported to Dr. Lee that he had been injured on the job. This appears to be the first medical report to give a history relating the injury to work or indicating that the date of injury was when plaintiff was working.
16. Dr. Lee referred plaintiff to Dr. Minchew with the Spine Center at UNC when plaintiff's pain continued. At that time in April 1997 plaintiff was taking excessive doses of his pain medication. In June 1997 Dr. Minchew noted plaintiff had positive Waddell findings and evidence for psycho-social overlay including focus on narcotic analgesics. The diagnosis was failed laminectomy syndrome. Dr. Minchew did not recommend additional surgery at that time.
17. Plaintiff filed his Form 18 seeking workers' compensation benefits around 30 April 1997. However, plaintiff had spoken with Dana Wilson by phone in approximately April 1996, and plaintiff testified that he told Mr. Wilson how he had injured his back at work while lifting. Plaintiff also informed Mr. Wilson he had not reported the incident in 1995 because he was afraid of losing his job.
18. Dana Wilson, the plant manager, testified that he saw plaintiff in July 1995, on plaintiff's first day back at work following his vacation, and noticed that he was walking "poorly" and asked plaintiff whether he was injured at work. Plaintiff reported that something in his back popped while he was on vacation while getting out of a chair. In April 1996, plaintiff called Mr. Wilson and informed him that he was injured at work while lifting some material. When asked by Mr. Wilson why he had not reported the injury before, plaintiff told Mr. Wilson that he was afraid to indicate that he was injured at work.
19. Plaintiff received short term disability from July 1995 through 10 January 1996, and long term disability from January 1996 through June 1997. These benefits were from employer sponsored plans.
20. Dr. Faulkenberry, a Family Practitioner, testified that he saw plaintiff on July 11, 1995, with complaints of low back pain with some radiation into the posterior thighs. Dr. Faulkenberry received the history from plaintiff that he had a three-day history of low back pain which started when plaintiff was cooking out, bent over, and felt severe pain in his low back. Dr. Faulkenberry testified that plaintiff never indicated to him that he injured his back while working for defendant-employer.
21. Dr. Faulkenberry referred plaintiff to Dr. Shupeck, a Neurosurgeon. Dr. Shupeck testified that he first saw plaintiff on August 7, 1995, at which time Dr. Shupeck inquired as to the history of plaintiff's condition with specific question of whether it was caused by work or an auto accident. Plaintiff advised Dr. Shupeck that he had pain since July 8, 1995, when he got out of a chair and felt a snap. In response to question by plaintiff's attorney, Dr. Shupeck testified that it was theoretically possible that lifting the materials at work could have caused plaintiff's back injury, but that it was difficult to say what role, if any, such an incident may have had in plaintiff's case. Plaintiff, however, did not advise Dr. Shupeck that he was injured at work.
18. The greater weight of the evidence is that plaintiff did not injure his back at work on June 29, 1995. Plaintiff was on vacation on July 8, 1995, and the medical records and deposition testimony of Dr. Faulkenberry and Dr. Shupeck indicate that this was the date of plaintiff's symptoms. Plaintiff did not provide a history of injury at work to either Dr. Faulkenberry or Dr. Shupeck; therefore, neither of these physicians were able to relate the injury to alleged events at work. Further, plaintiff was questioned about his condition when he returned to work by Mr. Wilson and gave this history of hurting his back while getting out of a chair while on vacation, which was the same history that plaintiff gave to Dr. Shupeck and Scotland Memorial Hospital. Plaintiff's sister, Joanne Gentry, testified that plaintiff was having back problems, but she did not recall him indicating during the vacation that he injured himself at work. Mr. Graham was not able to confirm plaintiff's alleged injury. Plaintiff did not report to his employer that his injury was related to work until April 1996. Plaintiff did not indicate to a health care provider that his injury was caused at work until 15 months after the injury. Neither Dr. Faulkenberry nor Dr. Shupeck were able to relate plaintiff's back injury and complaints to the alleged work injury. For these reasons, the greater weight of the evidence is contrary to plaintiff's current assertion that he was injured at work.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSION OF LAW
Plaintiff has failed to establish that he suffered a compensable injury arising out of and in the course of his employment with defendant on 29 June 1995. N.C. GEN. STAT. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following
 AWARD
1. The Plaintiff's claim for compensation is DENIED.
2. The parties shall each pay their respective costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER